# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

### APPEALS NO. 24-1795 & 24-1987

### UNITED STATES,
Appellee,

### v.

### DAVID NÚÑEZ-PÉREZ,
Defendant–Appellant.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---

## BRIEF FOR APPELLEE

---

W. Stephen Muldrow
United States Attorney

Juan Carlos Reyes-Ramos
Assistant United States Attorney
Chief, Appellate Division

Ricardo A. Imbert-Fernández
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

# TABLE OF CONTENTS

TABLES OF AUTHORITIES ............................................................... iv

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUES ON APPEAL ...................................2

STATEMENT OF THE CASE ..............................................................3

   **A.   Núñez commits several crimes** ...........................................3

   **B.   Núñez is charged and convicted in both United States and Puerto Rico Courts** .....................................................................4

   **C.   Núñez serves his federal prison sentence but is not released from imprisonment at that time; instead, he begins serving his Puerto Rico prison sentences** ......................................................6

   **D.   The Supreme Court decides *Sanchez Valle* and *Ramos*** ......6

   **E.   The district court vacates the Puerto Rico carjacking and manslaughter convictions on collateral review; orders Núñez be released** ...............................................................................7

   **F.   Núñez violates his conditions of supervised release** .........8

   **G.   Núñez claims he is not subject to supervised release and alternatively seeks early termination; the district court disagrees and revokes his supervised release** ......................................9

SUMMARY OF THE ARGUMENT ......................................................11

ARGUMENT ....................................................................................12

   **I. The district court correctly found that Núñez was subject to its jurisdiction per his still-alive term of supervised release** ........12

**A.** **Supervision commenced upon release in 2023, rather than during state incarceration** .......................................................................**13**

**B. Even if his term of supervised release commenced earlier, state incarceration tolled its running** ...........................................................**25**

**II. The district court did not abuse its broad discretion by rejecting Núñez's bid to terminate early his term of supervised release.** ..............**33**

CONCLUSION ............................................................................................37

CERTIFICATE OF SERVICE ...........................................................................39

**FEDERAL CASES**

Arcam Pharmaceutical Corp. v. Faria, 513 F.3d 1 (1st Cir. 2007)...................29

Blockburger v. United States, 284 U.S. 299 (1932)............................................31

Commonwealth of Puerto Rico v. Sanchez Valle, 579 U.S. 59 (2016)..............6

Cornell Johnson v. United States, 529 U.S. 694 (2000) ....................................21

Descamps v. United States, 570 U.S. 254 (2013)................................................31

Edwards v. Vannoy, 593 U.S. 255 (2021) ......................................................7, 36

F.C.C. v. AT&T, N562 U.S. 397 (2011) .................................................................20

Francis v. Maloney, 798 F.3d 33 (1st Cir. 2015)................................................15

Kamagate v. Ashcroft, 385 F.3d 144 (2d Cir. 2004)................................... 27, 28

Maracich v. Spears, 570 U.S. 48 (2013) ..............................................................26

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71 (2006).......26

Mont v. United States, 587 U.S. 514 (2019) ........................................... 24, 26, 27

Mundell v. Acadia Hosp. Corp., 92 F.4th 1 (1st Cir. 2024)..............................20

N.L.R.B. v. SW Gen., Inc., 580 U.S. 288 (2017)...................................................19

Nijhawan v. Holder, 557 U.S. 29 (2009) .............................................................31

Nixon v. City & Cnty. of Denver, 784 F.3d 1364 (10th Cir. 2015) ..................35

Núñez-Perez v. Escobar-Pabon, 133 F.4th 33 (1st Cir. 2025) .................. 5, 6, 7

Ramos v. Louisiana, 590 U.S. 83 (2020) ................................................................6

Sullivan v. Stroop, 496 U.S. 478 (1990) .............................................................20

United States v. Am. Union Transp. Inc., 327 U.S. 437 (1946) .......................26

United States v. Balser, 70 F.4th 613 (1st Cir. 2023) ............................ 26, 30, 34

United States v. Bussey, 745 F.3d 631 (2d Cir. 2014) .................... 18, 26, 27, 28

United States v. Emmett, 749 F.3d 817 (9th Cir. 2014) ....................................33

United States v. Freeman, 99 F.4th 125 (2d Cir. 2024) .............................. 17-18

United States v. Garcia-Rodriguez, 640 F.3d 129 (5th Cir. 2011) ...................20

United States v. Gross, 307 F.3d 1043 (9th Cir. 2002) .....................................35

United States v. Hale, 127 F.4th 638 (6th Cir. 2025) ........................................34

United States v. Hernández-Ferrer, 599 F.3d 63 (1st Cir. 2010) ........ 12, 28, 29

United States v. Hook, 471 F.3d 766 (7th Cir. 2006) ........................................33

United States v. Jackson, 426 F.3d 301 (5th Cir. 2005) ............................. 18, 28

United States v. Johnson, 529 U.S. 53 (2000) ...........................................passim

United States v. Joseph, 109 F.3d 34 (1st Cir. 1997) ............................. 15, 22, 23

United States v. Key, 602 F.3d 492 (2d Cir. 2010) .............................................34

United States v. Mala, 7 F.3d 1058 (1st Cir. 1993) ...........................................35

United States v. Neuhauser, 745 F.3d 125 (4th Cir. 2014) ................. 17, 19, 21

United States v. Seger, 577 F. App'x 1 (1st Cir. 2014) ......................................34

United States v. Tilley, 105 F.4th 482 (1st Cir. 2024) .........................................33

United States v. Zannino, 895 F.2d 1 (1st Cir. 1990)............................ 26, 30, 34

## FEDERAL STATUTES

18 U.S.C. § 2119............................................................................................. 31, 32

18 U.S.C. § 3553(a)(1) ........................................................................................35

18 U.S.C. § 3583(a) ....................................................................................... 14, 15

18 U.S.C. § 3583(d) ............................................................................................20

18 U.S.C. § 3583(e) ............................................................................................35

18 U.S.C. § 3583(e)(1) ................................................................................... 33, 34

18 U.S.C. § 3624(e) ................................................................................... passim

18 U.S.C. § 3742(a) ..............................................................................................1

28 U.S.C. § 1291....................................................................................................1

28 U.S.C. § 2254....................................................................................................7

## FEDERAL RULES

Fed. R. App. P. 4(b)(1) .........................................................................................1

Fed. R. App. P. 28(b)(1) ........................................................................................1

## JURISDICTIONAL STATEMENT

The United States agrees that this Court has jurisdiction to consider this timely appeal. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3742(a); Fed. R. App. P. 4(b)(1); *see also* Fed. R. App. P. 28(b)(1) (a jurisdictional statement is not required unless the appellee is dissatisfied with the appellant's).

I. Whether the district court correctly concluded that Núñez's supervised release term had not expired while he was imprisoned on state convictions.

II. Whether the district court abused its discretion in denying Núñez's motion for early termination of supervised release.

On August 23, 2024, the district court rejected David Núñez-Pérez's motion to terminate his term of supervised release early. A little over a month later, the district court revoked that term because Núñez had, for more than a year, repeatedly violated the conditions of his supervised release. He now appeals both orders.

## A. Núñez commits several crimes

In 2001, Núñez and two others held up an unsuspecting fast-food customer and carjacked his Hyundai Elantra at a Wendy's drive-through. (AA 190).[1] As Miguel Comas-Horta ordered lunch, one confederate ambushed the driver-side window, aimed a gun at Comas, demanded money, and commanded him out of the car. (AA 190). Comas gave up his wallet and stepped out of the car. (AA 190). A second assailant ordered him to the ground. (AA 190). Then, Núñez and his cohorts clambered into the car and took off. (AA 190).

---

[1] Unless otherwise specified, "DE" refers to a Docket Entry or Entries in the underlying criminal case; "CDE" to the same in D.P.R. Civil Case No. 19-1555 (WGY); "AB" to the Appellant's Brief; "AA" to Appellant's Appendix; and "AD" to the Appellant's Addendum.

Police located the Elantra after Comas called 911. (AA 190). They gave chase in motorcycles and cars. (AA 190-91). During the pursuit, the carjackers drove at high speed against traffic. (AA 191). Núñez threw two pistols out of the vehicle. (DE 66 at 5). Police later recovered one. (DE 66 at 5). The attempted escape came to a head when the would-be fugitives struck police officer William Camacho with the Elantra. (AA 191; DE 66 at 5). He was thrown into the air by the impact. (AA 191). The carjackers lost control of the Elantra and crashed into two other cars. (AA 191). They were quickly arrested as they tried to run off. (AA 191).

Camacho was rushed to the hospital. (AA 191). He died from his injuries. (AA 191).

## B. Núñez is charged and convicted in both United States and Puerto Rico Courts

A federal grand jury charged Núñez with aiding and abetting a carjacking resulting in death, the brandishing and use of a firearm in furtherance of that carjacking, and the possession of a firearm by a felon. (DE 66 at 3). He pleaded guilty to the carjacking resulting in death count pursuant to a plea agreement. (DE 66 at 3; AA 40). The district court sentenced him to ten years in prison and five years of supervised release, a

significant downward variance. (AA 41-42; DE 66 at ¶¶ 26 and 51 (calculating guideline ranges at 235 to 293 or 324 to 405 months in prison)). It also dismissed the firearm-related counts on the United States' motion. (AA 40).

After Núñez was charged in federal court but before his plea and sentence, Puerto Rico authorities also brought against him separate state charges arising from the same incidents: carjacking, first degree murder, and two counts related to illegal firearm possession and use.[2] *Núñez-Perez v. Escobar-Pabon*, 133 F.4th 33, 35 (1st Cir. 2025). A Puerto Rico jury found Núñez guilty of the carjacking count, the firearm counts, and the lesser included charge of manslaughter with majority-of-the-votes rather than unanimous verdicts.[3] *Id.*; (AA 192, 193). The Puerto Rico court sentenced him to 69 years in prison: forty-five years for the carjacking offense, seven-and-a-half years for one firearm offense, fifteen years for the other firearm offense, and one-and-a-half years for the manslaughter offense, to be served

---

[2]     The district court was aware of the state criminal proceedings against Núñez when it sentenced him. (DE 66 at ¶ 24).

[3]     At the time, the Puerto Rico Constitution allowed guilty verdicts by way of at least nine out of twelve juror votes.

consecutively to each other and to his federal sentence. (CDE 47-2 at 3, 5, 7, 9). He appealed on double jeopardy grounds but was unsuccessful. *Núñez-Perez*, 133 F.4th at 35-36.

## C. Núñez serves his federal prison sentence but is not released from imprisonment at that time; instead, he begins serving his Puerto Rico prison sentences

In 2010, Núñez finished serving his prison sentence for his federal carjacking conviction and was transferred to the custody of Puerto Rico to serve his consecutive local imprisonment sentences. (AA 90-91, 116).

## D. The Supreme Court decides *Sanchez Valle* and *Ramos*

In 2016, while Núñez was in Puerto Rico's custody, the Supreme Court of the United States ruled in *Commonwealth of Puerto Rico v. Sanchez Valle* that Puerto Rico and the United States are the same sovereign for double jeopardy purposes. 579 U.S. 59 (2016). So, the Supreme Court held that Puerto Rico could not bring successive prosecutions following a defendant's federal convictions for the same conduct under equivalent criminal laws. *Id*.

Later, in 2020, the Supreme Court held in *Ramos v. Louisiana* that the Sixth Amendment right to a jury trial requires that states obtain a unanimous verdict to convict a defendant of a felony. 590 U.S. 83 (2020). It held about a

year later that *Ramos* did not apply retroactively to already-final convictions. *Edwards v. Vannoy*, 593 U.S. 255, 258 (2021).

**E. The district court vacates the Puerto Rico carjacking and manslaughter convictions on collateral review; orders Núñez be released**

In 2019, Núñez moved under 28 U.S.C. § 2254 to vacate his Puerto Rico carjacking and manslaughter convictions (after unsuccessfully moving Puerto Rico courts for the same relief). (CDE 3; 14). He contended that the Supreme Court's ruling in *Sanchez Valle* meant the double jeopardy clause prevented Puerto Rico from prosecuting those charges following his federal conviction for carjacking resulting in death based on the same conduct. (CDE 3; 14). The district court agreed in August of 2022 and vacated those convictions.[4] (CDE 52). The district court's judgment did not affect Núñez's Puerto Rico firearm convictions. (CDE 52 at 39).

The district court, under the impression that Núñez had more time left to serve for his firearm offenses, stayed the execution of the habeas writ pending Puerto Rico's appeal. (AA 216-17). More than ten months later, Núñez filed an emergency motion for his release arguing he had by then

---

[4]     Though Puerto Rico appealed on procedural grounds, this Court affirmed. *Núñez-Perez*, 133 F.4th 33.

already served his term of imprisonment for the undisturbed firearm convictions "by several months." (CDE 64, 64 at 2). On July 18, 2023, the district court agreed and ordered Núñez's release from Puerto Rico custody. (CDE 82).

### F. Núñez violates his conditions of supervised release

Following his release from Puerto Rico's custody on July 18, 2023, Núñez began serving his term of supervised release. (AA 45). At the time, Núñez raised no objections to being on supervised release. Within a year, he had already racked up at least 17 mostly-cocaine-and-fentanyl-abuse-related violations despite repeated attempts to address his ceaseless transgressions and help him successfully reintegrate into society via alternatives to revocation. (AA 45-48, 49-54, 55-59). For example, Núñez received drug abuse treatment at several inpatient, outpatient and detoxification programs. (AA 58). Based on his persistent violations, the probation office moved to revoke Núñez's term of supervised release. (AA 58-59).

The district court ordered Núñez released to yet another inpatient treatment program, pending a final revocation hearing in September. (DE 183, 194, 195; AA 60-61). However, shortly after his discharge from that

program, Núñez again tested positive to cocaine and fentanyl in late July and once more in early August. (AA 62).

## G. Núñez claims he is not subject to supervised release and alternatively seeks early termination; the district court disagrees and revokes his supervised release

In response to the revocation motion, Núñez moved to terminate his term of supervised release, arguing that his term had commenced in 2010 when he was transferred from federal to state custody, and had thus finished serving his 5-year term in 2015. (AA 70-73). In the alternative, he moved the court to terminate supervised release based on its authority to modify or reduce a term after a one-year period. (AA 73-75). The United States opposed, contending that Núñez's arguments found no support in the relevant statutory provisions or caselaw. (AA 81-85).

After receiving extensive further argument at a hearing, the district court held that supervised release began on the date Núñez was released from imprisonment in July of 2023, and further declined to modify or reduce Núñez's supervised release term. (AA 127-128, 135). The Court issued a memorandum and order to that effect. (AD 1-8). It then revoked Núñez's supervised release on September 27, 2024. (AD 9-13). Rather than imposing

an imprisonment term, the district court sentenced him to time served and to a long-term inpatient drug abuse treatment program. (AD 9-13).

This appeal followed.

The district court correctly concluded that Núñez's term of supervised release did not expire during his years in Puerto Rico custody. Núñez was continuously confined until July 18, 2023, so supervised release started on that date, pursuant to 18 U.S.C. § 3624(e). Even if supervised release had somehow commenced earlier, it would have been tolled under § 3624(e) because he was imprisoned in connection with convictions for state crimes.

Núñez's contrary reading would gut the rehabilitative purpose of supervised release. Congress designed supervised release to aid reintegration into the community—not to run silently while a defendant sits in state prison. Allowing Commonwealth incarceration to substitute for federal supervision would deprive the federal system of its lawfully imposed sentence and undermine the federal interest in reentry monitoring.

The district court also acted well within its discretion in denying early termination of supervised release. Núñez must and cannot show that his conduct warrants release: in just one year, he tested positive for illegal drugs nineteen out of twenty times. That record of repeated violations squarely defeats his request for early termination.

The orders below should be affirmed.

**ARGUMENT**

## I. The district court correctly found that Núñez was subject to its jurisdiction per his still-alive term of supervised release

Núñez's contention that his term of supervised release had expired by 2015 is built on sand. His supervised release could not have started before 2023 because he was in continuous imprisonment before then. Even if his supervised release started before 2023, his state imprisonment would have tolled the term.

The contrary arguments Núñez advances boil down to a challenge of the district court's jurisdiction to supervise and revoke him. So, de novo review applies here. *United States v. Hernández-Ferrer*, 599 F.3d 63, 65 (1st Cir. 2010). Núñez cannot succeed under that standard or any other.

This appeal hinges on what 18 U.S.C. § 3624(e) sets forth. That provision governs when a term of supervised release begins, and whether it is later tolled, providing in relevant part:

> A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer . . . . **The term of supervised release commences on the day the person is released from imprisonment** and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. **A term**

12

**of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime** unless the imprisonment is for a period of less than 30 consecutive days.

18 U.S.C. § 3624(e) (emphasis added). Under the plain terms of this provision, supervised release begins only "after imprisonment" and commences on "the day the person is released from imprisonment." *Id*. Once a term of supervision has commenced, the term "does not run" while the defendant is "imprisoned in connection with a conviction" for 30 days or more. *Id*. These provisions implement the purpose of supervised release. *See United States* v. *Johnson*, 529 U.S. 53, 59 (2000). "Congress intended supervised release to assist individuals in their transition to community life." *Id*. Therefore, "[s]upervised release has no statutory function until confinement ends." *Id.*

**A. Supervision commenced upon release in 2023, rather than during state incarceration**

Consistent with the text and purpose of Section 3624(e), Núñez's term of supervision "commenced" on July 18, 2023, when he was released from state custody.

In *Johnson*, the Supreme Court considered the application of Section 3624(e) to a defendant who served excess prison time because certain of his

federal convictions had been vacated. 529 U.S. at 54-57. Although the defendant overserved his prison sentence, the Supreme Court held that supervised release began "on the day the prisoner in fact [was] freed from confinement." *Id*. at 57-58.

The Court explained that the "ordinary, commonsense meaning" of the word "release" is "to be freed from confinement." *Id*. at 57. Relying on the dictionary definition of "release," the Court held that word as used in the clause in question meant to actually leave imprisonment. *Id*. (quoting Webster's New International Dictionary 2103 (2d ed. 1949)). To hold otherwise, the Court reasoned, would "diminish[] the concept the word intends to convey." *Id*.

The Court noted that Congress could have drafted the statute differently, such as by saying "on the day the person is released or on the earlier day when he should have been released." *Id*. Instead, however, Congress was clear that "supervised release does not run during any period in which the person is imprisoned." *Id*. (quoting 18 U.S.C. § 3624(e)). The statute, the Court explained, "suggests a strict temporal interpretation, not some fictitious or constructive earlier time." *Id*. The Court also found support in a related provision, 18 U.S.C. § 3583(a), which authorizes "a term

of supervised release *after* imprisonment." *Id*. at 58 (quoting 18 U.S.C. § 3583(a)) (emphasis added).

This Court in *United States v. Joseph* similarly said that "[Section 3624(e)] forbids the running of the term of supervised release during any period in which the person is imprisoned."109 F.3d 34, 37 (1st Cir. 1997). That is binding precedent that Núñez does not recognize or grapple with and that short-circuits his arguments on appeal. For, just like here, the *Joseph* defendant "was in prison at the time he now seeks to identify as the beginning of his terms of supervised release and was, under the plain language of [Section] 3624(e), ineligible for supervised release then." *Id*; *see also Francis* v. *Maloney*, 798 F.3d 33, 39 (1st Cir. 2015) ("Francis requests an order back-dating his release from confinement. But, *Johnson* says that such a remedy contravenes the plain language of the statute and that the date Francis's supervised release began must, as a matter of statutory law, remain *the day he was physically released from incarceration*.") (emphasis added).

Núñez does not dispute that he remained in confinement continuously from the date of his arrest leading to his federal conviction until July 18, 2023—the date he left state prison. His supervised release thus began on July 18, 2023. The fact that some of Núñez's state convictions were ultimately

15

vacated, leading to an overlong state prison sentence, is immaterial to the start date of his supervised release. *Cf. Johnson*, 529 U.S. at 57.

Núñez nonetheless contends he was "released" in 2010, when the Bureau of Prisons transferred his custody to the state. But that argument runs counter to the "ordinary, commonsense meaning of 'release'"—that is, to be "freed from confinement." *Johnson*, 529 U.S. at 58. Núñez was not "freed from confinement" when he was transferred from federal to state custody. Instead, he remained confined until his actual release in 2023. His arguments attempting to interpret the word "release" in his favor ignore that the Supreme Court in *Johnson* already set the benchmark for what that word means as used in Section 3624(e) and that this Court in *Joseph* held that supervision cannot begin during "any period" of imprisonment.

Núñez is silent as to *Joseph* but attempts to distinguish *Johnson* by hyper focusing on passages that refer to release from the Bureau of Prisons. He maintains that *Johnson* should properly be read as supporting the end of a federal term of imprisonment as the start date for supervised release even in cases where the defendant was never released but instead transferred to continued confinement. (AB 15-16). However, *Johnson* does no such work. The *Johnson* Court had no occasion to talk of anything but release from

federal confinement because a period of state confinement was simply not at issue in that case. 529 U.S. at 54-57. However, the Supreme Court's interpretation of the statute and ruling as to the meaning of "release" apply with full force here, despite Núñez's protestations. *Id*. at 57; *see also United States v. Neuhauser*, 745 F.3d 125, 130 (4th Cir. 2014) (observing, in the context of civil imprisonment, that "[t]hat the Supreme Court applied this definition so readily to another supervised-release case underscores its relevance here" and that "*Johnson* emphasizes the importance of construing § 3624 in light of its purpose").

Recognizing the significance of the *Johnson* definition of release, the Second Circuit recently held that supervised release does not commence until release from state confinement when a defendant is transferred to state custody upon expiration of his federal term of imprisonment. *See United States v. Freeman*, 99 F.4th 125, 127-128 (2d Cir. 2024). Any other conclusion "would be inconsistent with the Supreme Court's interpretation of the statutory language." *Id*. at 128. And though Núñez is aware of *Freeman*, (*see*

AB 21), he neglects to contend with it or provide this Court with countervailing caselaw.[5]

At bottom, that a portion of Núñez's confinement was in state, rather than federal, custody does not change the analysis. Section 3624(e) treats state and federal custody the same. Indeed, in the tolling provision, it expressly pauses supervised release during periods of imprisonment of 30 days or more regardless of whether for "Federal, State, or local crime[s]." 18 U.S.C. § 3624(e); *see*, *e.g.*, *United States v. Bussey*, 745 F.3d 631, 633 (2d Cir. 2014) (holding that federal supervised release was tolled during time in state custody for parole violation); *United States v. Jackson*, 426 F.3d 301, 301-02 (5th Cir. 2005) (same, even where state parole violation was later found unconstitutional). And although the language of the statute is explicit that supervised release runs concurrent to state "probation or supervised release or parole," Section 3624(e) does not provide the same for state incarceration.

---

[5] In fact, he mischaracterizes the Second Circuit's holding, representing to this Court that "that Circuit was bound to hold that supervision was tolled," (AB 21), despite the decision's sole focus on the commencement date and its express affirmation that it would not reach the tolling question. *Freeman*, 99 F.4th at 126 ("Accordingly, we need not address the question of whether his term of supervised release was 'tolled' during his years in state custody.").

Considering the context and purpose of the statute (which will be discussed in detail later on), the omission of state incarceration from that list signals deliberate exclusion by Congress. *See Johnson*, 529 U.S. at 58 (finding no basis to allow supervised release to run concurrently to a custodial term in the absence of an applicable exception); *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) (citations omitted) (explaining statutory interpretation canon of *expressio unius est exclusio alterius*).

While Núñez points to other provisions in the statute that purportedly use "imprisonment" to refer solely to federal incarceration, it does not follow that "released from imprisonment" in Section 3624(e) is construed so narrowly. Núñez's cramped reading would mean a person could be "released from imprisonment" while still in continuous confinement in state prison—a nonsensical result that cannot be squared with *Johnson*, let alone the text or purpose of the statute. *See Neuhauser*, 745 F.3d 129 ("It is hard to imagine the way in which supervision would aid in a person's transition if he could serve his entire term of supervised release before leaving prison."). It would also mean that "imprisonment" in the second sentence of Section 3624(e) has a narrower definition than "imprisoned" in the very next sentence, which undeniably encompasses "Federal, State, or local"

incarceration. Words used more than once in the same statute should generally be presumed to carry the same meaning.[6] *See Sullivan v. Stroop*, 496 U.S. 478, 484 (1990); *but see Mundell v. Acadia Hosp. Corp.*, 92 F.4th 1, 11 (1st Cir. 2024) (emphasizing that such a presumption "is not rigid" (citations omitted)).

Nor does Núñez find support in cases involving administrative detention by U.S. Immigration and Customs Enforcement. As the Fifth Circuit Court of Appeals explained in *United States v. Garcia-Rodriguez*, "administrative detention of an alien is not the same as imprisonment for a crime." 640 F.3d 129, 133 (5th Cir. 2011). Moreover, by statute, transfer of custody to Immigration and Customs Enforcement for purposes of deportation is itself a potential condition of supervised release. *See* 18 U.S.C. § 3583(d) (providing that "[i]f an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation.").

---

6    Núñez himself relies on this presumption in his brief, but neglects to recognize that it applies unfavorably to his position. (AB at 16 (citing *F.C.C. v. AT&T*, 562 U.S. 397, 408 (2011)).

Accordingly, unlike immigration detention, state incarceration is "imprisonment" under Section 3624(e). *See generally Neuhauser*, 745 F.3d at 129 (noting "that only a broad definition of 'imprisonment' comports with the purpose of § 3624").

The conclusion that Núñez's supervision did not begin until his release from state custody is consistent with the purpose and design of supervised release. "Congress intended supervised release to assist individuals in their transition to community life." *Johnson*, 529 U.S. at 59. Supervised release thus serves "rehabilitative ends, distinct from those served by incarceration," including providing "individuals with postconfinement assistance." *Johnson*, 529 U.S. at 59-60. As the legislative history made clear, a central goal of supervised release was "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release." *Id*. at 59 (quoting S. Rep. No. 98-225, p. 124 (1983)); *see also Cornell Johnson v. United States*, 529 U.S. 694, 708-09 (2000) (the purpose of supervised release "is to improve the odds of a successful transition from the prison to liberty"). "Incarceration, to the

contrary, does nothing to assist a defendant's transition back into society and is not a reasonable substitute for a portion of the supervised release term." *Joseph*, 109 F.3d at 39.

Here, Núñez's supervised release includes specific requirements aimed at helping him transition to community life and avoid recidivism. Núñez could not fulfill these requirements—and thus demonstrate his ability to behave lawfully—while in state prison. Nor could he obtain the benefits supervision seeks to provide, including a smoother transition back into society and access to resources and programming designed to reduce recidivism. *See Johnson*, 529 U.S. at 59 ("The objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release."). The need for monitoring and assistance is particularly acute for a defendant like Núñez: He has struggled to successfully reintegrate into society due to his ongoing cocaine and fentanyl abuse problems, as evinced by his 19 different failed drug tests. (AA 45-48, 49-54, 55-59, 62).

Federal supervision can assist in his effort to acclimate to society and avoid falling back into patterns of crime. But by treating state prison time and supervised release as "interchangeable," Núñez ignores these goals and

22

the benefits supervised release can provide for both him and the community. *Johnson*, 529 U.S. at 59. And his supervision term has actively sought to accomplish these goals and benefits, by providing him with detoxification, inpatient and outpatient drug abuse treatment. (AA 58). Even when supervised release was revoked, the district court did not send Núñez off to prison, but instead again ordered him to undergo drug treatment. (AD 9-13). The probation office could not have monitored him and the district court could not have ordered him to participate in such programs while he was in state custody. Thus, Núñez's arguments turn a blind eye to the rehabilitative purpose of supervise release. There is simply "no meaningful basis for a simple tradeoff between time spent in prison and the supervised time spent after release." *Joseph*, 109 F.3d at 39.

Núñez's arguments also fail because he seeks to substitute state incarceration for federal supervision. Núñez's term of supervised release is a component of his federally imposed sentence. He tries to flip that reality on its head by protesting that state authorities should not be allowed to "control" the start date of supervised release, but he misses the point. By attempting to replace federal supervision with state incarceration, Núñez seeks to "deprive the Government of its lawfully imposed sentence" based

on the actions of a "different sovereign." *Mont v. United States*, 587 U.S. 514, 524 (2019). None of the procedural history pertaining to Núñez's state charges and convictions overrides the federal government's and the district court's judgment that Núñez requires federal supervision to assist his integration back into society.[7] Yet that is precisely what Núñez seeks to do by urging that his supervised release ran while he was in state custody. Principles of federal supremacy, *see* U.S. Const., Art. VI, cl. 2, counsel that Section 3624(e) should not be interpreted to abdicate federal sentences so casually. Given the purpose of supervised release to provide rehabilitation and assistance and given the strong federal interest in seeing federal sentences enforced, Section 3624(e) is properly read to require supervised release to start on the date of release from continuous confinement, whether federal or state.

---

[7]     Núñez speculates throughout his brief that the Puerto Rico sentences inflated his aggregate sentence beyond what the district court originally intended. That assumption finds no support in the record. Instead, the record is better read to signify that the district court imposed such a low ten-year sentence for his carjacking resulting in death conviction (a significant downward variance from a guideline range of 235 to 293 months in prison (DE 66 at ¶ 26) or 324 to 405 months in prison (DE 66 at ¶ 51)) because it was keenly aware of the serious state charges and looming stiff sentences. To be sure, the district court was aware of the state criminal proceedings in Núñez's presentence report. (DE 66 at ¶ 24).

As set forth above, Núñez's term of supervised release "commence[d]" on July 18, 2023, the date he was freed from confinement. Prior to that date, Núñez's term of supervision had not begun because he had not been "released from imprisonment" since imposition of his federal sentence. 18 U.S.C. § 3624(e).

## B. Even if his term of supervised release commenced earlier, state incarceration tolled its running

Núñez's supervision properly commenced in 2023, as explained above. However, even if it had commenced earlier, it would have been tolled during the time he was imprisoned for his state convictions.

The second sentence of Section 3624(e), as discussed above, governs when a term of supervision begins, stating that it "commences on the day the person is released from imprisonment." The third sentence, in contrast, governs whether a term of supervision is tolled after it begins, stating that the term "does not run" during any period of 30 days or more in which "the person is imprisoned in connection with a conviction for a Federal, State, or local crime." 18 U.S.C. § 3624(e).

Núñez does not contest that he was imprisoned in connection with a state conviction while serving his still-valid firearm sentences, thereby

waiving any argument to the contrary. *See United States v. Balser*, 70 F.4th 613, 617 (1st Cir. 2023) (arguments not raised in an opening brief are waived); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (undeveloped arguments are deemed waived). Nor could he. It is beyond dispute that the phrase "in connection with" has a broad meaning. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (interpreting "in connection with the purchase or sale" broadly in the context of Section 10(b) of the Securities Exchange Act of 1934); *United States v. Am. Union Transp., Inc.*, 327 U.S. 437, 441-43 (1946) (describing the phrase "in connection with" in the Shipping Act as "broad and general"). Indeed, the phrase is "essentially indeterminate because connections, like relations, stop nowhere." *Maracich v. Spears*, 570 U.S. 48, 59 (2013) (internal quotation marks omitted). In the context of Section 3624(e) specifically, both the Supreme Court and the Second Circuit have acknowledged the expansive reach of the "in connection with" language. *See Mont*, 587 U.S. at 521–22 (citations omitted) (noting that "in connection with" in Section 3624(e) can bear a "broad interpretation" (quoting *Dabit*, 547 U.S. at 85)); *Bussey*, 745 F.3d at 633 (noting that "in connection with" in Section 3624(e) is an "expansive term

synonymous with 'relating to,' 'associated with,' 'with respect to,' and 'with reference to'" (quoting *Kamagate v. Ashcroft*, 385 F.3d 144, 154 (2d Cir. 2004))).

As evidence of the expansiveness of the phrase, Section 3624(e) imposes neither a temporal nor a causal limitation. That is, for imprisonment to be "in connection with" a conviction under the statute, the imprisonment need not occur after the relevant conviction, and it need not directly result from the conviction either. For instance, in *Mont*, the Supreme Court held that pretrial incarceration (i.e., incarceration before any conviction) that was later credited for time served was "in connection with" later convictions. 587 U.S. at 527. As the Court explained, "if Congress intended a narrower interpretation, it could have easily used narrower language, such as 'after a conviction' or 'following a conviction.'" *Id*. at 522. But having chosen not to do so, the Court could not "override Congress's choice to employ the more capacious phrase 'in connection with.'" *Id*.

Likewise, in *Bussey*, the Second Circuit held that supervised release was tolled during state incarceration for a state parole violation. 745 F.3d at 634. The parole violation in *Bussey* is what directly caused the defendant's incarceration — there was no new criminal conviction. *Id*. at 633. However, because parole (and therefore revocation) was a "consequence" of the

underlying conviction, the defendant's imprisonment resulting from the violation was deemed "in connection with" that conviction. *Id*. Similarly, in *Jackson*, the Fifth Circuit held that a state parole violation was connected to an underlying conviction, even though the parole violation—and therefore the defendant's custody—was later found unconstitutional. 426 F.3d at 305. In each of the above cases, the defendant's imprisonment did not directly result from a conviction, but instead was "relat[ed] to," "associated with," or "with reference to" a conviction. *Bussey*, 745 F.3d at 633 (quoting *Kamagate*, 385 F.3d at 154). These cases by themselves defeat Núñez's unsupported contention that a conviction must be "new" to toll. (*See* AB 19 ("While Puerto Rico authorities took Mr. Núñez into custody after his BOP release, their holding him on P.R. Code sentences was not pursuant to a new crime, as the tolling statute provides")).

Núñez takes a different tack to argue tolling could not apply to his case. He relies on a line in *United States v. Hernandez-Ferrer*, 599 F.3d 63 (1st Cir. 2010), to posit tolling is not available unless the defendant is imprisoned for a different crime. The sentence in question: "The only tolling provision that Congress saw fit to enact is contained in 18 U.S.C. § 3624(e), which tolls the running of a term of supervised release during any period in which an

offender is imprisoned for thirty days or more in connection with a different crime." *Id*. at 67. Three main unsurmountable obstacles stand in the way of Núñez's wrong reading of *Hernandez-Ferrer* and Section 3624(e)'s tolling provision.

First, that line in *Hernandez-Ferrer* does not fetter this Court. The *Hernandez-Ferrer* Court was called to answer whether tolling is available when a defendant absconds from supervision. *Id*. at 64. It ruled no, given Section 3624(e)'s silence on abscondment in its tolling provision. *Id*. at 67-69. The *Hernandez-Ferrer* Court thus had no occasion to determine whether tolling for imprisonment requires a different crime, or simply connection to a conviction as the statute plainly states. Thus, the line Núñez relies on is merely dicta and not binding here. *See Arcam Pharmaceutical Corp. v. Faria*, 513 F.3d 1, 3 (1st Cir. 2007) (explaining that dicta are neither law of the case nor binding precedent, but rather "observations in a judicial opinion or order that are not essential to the determination of the legal questions before the court"). And *Hernandez-Ferrer* does not include any rationale, analysis or citation to authorities explaining why tolling would, in fact, require a *different* crime.

Second, nothing in Section 3624(e) supports the existence of a "different crime" requirement. Indeed, the controlling statute says simply that the supervised release term "does not run" during any period of 30 days or more in which "the person is imprisoned in connection with a conviction for a Federal, State, or local crime." 18 U.S.C. § 3624(e). The plain meaning of the statute forecloses Núñez's attempt to add extraneous conditions. What is more, as discussed above, Congress did speak in Section 3624(e) of what terms can run concurrently with supervised release and excluded any form of criminal imprisonment from that list, whether tied to a new crime or not.

Third, he grounds his argument on the flawed premise that his state incarceration was for the "same" crime as his federal sentence. Yet, he mentions that the crimes were not "different" in passing and develops no argument that they were the same crime. (AB 19). This is waiver. *See Balser*, 70 F.4th at 617 (arguments not raised in an opening brief are waived); *Zannino*, 895 F.2d at 17 (undeveloped arguments are deemed waived).

Furthermore, "crime" means "an illegal act for which someone can be punished by the government." *Merriam-Webster.com Dictionary*, s.v. "crime," accessed August 23, 2025, https://www.merriam-webster.com/dictionary/crime. Under that definition, Núñez's federal

sentence for participating in the carjacking of Comas's car and the killing of Camacho during the getaway cannot be said to be the same crime as participating in the illegal use and possession of a firearm, even if there was some temporal overlap and relationship between the various offending acts. And the Supreme Court has said that "when a statute lists multiple, alternative elements" it "effectively creates 'several different ... crimes.'" *Descamps v. United States*, 570 U.S. 254, 264 (2013) (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)). Under this binding approach, different crimes are defined by different elements. It is beyond reasonable dispute that Núñez's federal statute of conviction (punishing aiding and abetting a carjacking resulting in death) and his state firearm statutes of conviction each contain distinct elements. *Compare* 18 U.S.C. § 2119 *with* Sections 4.04 and 4.06 of the Puerto Rico Weapons Act, P.R. Laws Ann. tit. 25, § 458 et seq.[8] His waived argument therefore also fails on the merits.

---

[8] For that matter, though the Commonwealth of Puerto Rico did not dispute in the collateral proceedings that the state and federal carjacking statutes contained different elements, they do. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932). Puerto Rico carjacking requires the use of "an object capable of causing grave bodily injury," P.R. Laws Ann. tit. 33, § 4279B, and the federal one does not. Federal carjacking requires the taken vehicle have a nexus with interstate or foreign commerce plus, as applied to

Finally, Núñez's arguments that allowing tolling would usurp and undermine his federally imposed sentence are of no avail. As discussed in pages 23 to 25 of this brief, and at page 24's footnote n.7, allowing state incarceration to supplant supervised release would in fact cause the undermining and usurpation Núñez so adamantly warns against, and the district court knew of the state criminal proceedings against Núñez. And, as also discussed above in pages 21 to 23, tolling supervised release during Núñez's state sentences is consistent with Congress's intent and the purpose of supervised release.

For these reasons, Núñez's state incarceration tolled his supervised release term, even if it had commenced in 2010.

The district court accordingly did not err in determining it had jurisdiction to supervise and revoke Núñez.

---

him, that death results, *see* 18 U.S.C. §§ 2119, 2119(3), and the state one does not. They are thus different crimes as well.

## II. The district court did not abuse its broad discretion by rejecting Núñez's bid to terminate early his term of supervised release.

Núñez's challenge to the district court's denial of his motion for termination fails because his conduct did not warrant termination.

Though this Court has not set a standard for the review of decisions regarding a defendant's motion to terminate early supervised release under 18 U.S.C. § 3583(e)(1), it typically reviews decisions regarding supervised release for abuse of discretion. *United States v. Tilley*, 105 F.4th 482, 486 (1st Cir. 2024). And because courts have broad discretion in determining whether to terminate a term early, that standard should be especially deferential here. *See United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)); *United States v. Hook*, 471 F.3d 766, 771 (7th Cir. 2006) (same). Such a standard firmly blocks Núñez's path to success on appeal.

The district court denied Núñez's motion to terminate supervised release because "in one (1) year, [he] ha[d] tested positive to nineteen (19) out of twenty (20) drug tests administered by the U.S. Probation Office." (AD 8 (citing DE 209)). Thus, the district court concluded, "[Núñez's] conduct during his supervised release [did] not justify modification of his term of

supervised release." (AD 8). This was an appropriate exercise of the district court's ample discretion.

After all, the early termination statute, Section 3583(e)(1), provides that a court may terminate supervised release "at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice" after considering certain sentencing factors. *See* 18 U.S.C. § 3583(e)(1). "The conjunction 'and' used in the statute clearly indicates that a district court must conclude that the early termination of supervised release is warranted *both* by the individual's conduct and also by the interest of justice." *United States v. Hale*, 127 F.4th 638, 640 (6th Cir. 2025) (emphasis added) (citations omitted); *see also United States v. Key*, 602 F.3d 492, 494 (2d Cir. 2010) (requiring both showings); *c.f. United States v. Seger*, 577 F. App'x 1, 1 (1st Cir. 2014) (per curiam) (suggesting each prong must be independently satisfied).

Núñez at no point has contended that his conduct warrants early termination of his supervised release, and his repeated violations to his conditions foreclose any such argument. This is waiver. *See Balser*, 70 F.4th at 617 (arguments not raised in an opening brief are waived); *Zannino*, 895

34

F.2d at 17 (undeveloped arguments are deemed waived). To boot, he does not grapple with the district court's denial of his motion on that basis. "The first task of an appellant is to explain to [the Court] why the district court's decision was wrong" and Núñez fails in that task because he does not "explain what was wrong with the reasoning that the district court relied on in reaching its decision." *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015); *see also United States v. Mala*, 7 F.3d 1058, 1061 (1st Cir. 1993) ("The devoir of persuasion rests with the appellant to show error in the ruling below"). His failure to tackle the conduct prong and his inability to show good conduct render his arguments as to the interests of justice prong inapposite and insufficient. His claim therefore cannot carry the day.

Furthermore, this Court may also affirm because Núñez has never carried his burden of showing that the sentencing factors weigh in favor of termination, as the statute plainly requires. To be sure, courts must consider nine sentencing factors before granting early termination. *See* 18 U.S.C. § 3583(e) (cross-referencing 18 U.S.C. § 3553(a)(1), (2)(B)-(D), (4)-(7)). That failure further dooms his claim. *See United States v. Gross*, 307 F.3d 1043, 1044 (9th Cir. 2002) (holding that modification was properly denied where

defendant did not contend modification would be supported by any of the Section 3553(a) factors).

Finally, even if this Court overlooks these fatal flaws, Núñez's central claim for why the court allegedly abused its discretion fails. The district court did not abuse its broad discretion by refusing to view the alleged unconstitutionality of Núñez's state firearm convictions as grounds for termination. To be sure, the Supreme Court determined that *Ramos*, which held unconstitutional that states convict felonies via non-unanimous verdicts, was not applicable retroactively. *Vannoy*, 593 U.S. at 258. Ordinary principles of nonretroactivity already consider, and reject, the notion that such new rules should be allowed to disturb final convictions and sentences, including terms of supervised release. The very point of the doctrine is to identify the small subclass of developments that should be applied retroactively. The Supreme Court ruled that *Ramos* does not fall into that category. To treat a nonretroactive rule as a compelling reason to disturb Núñez's supervised release term would thus undo the balance already struck by ordinary nonretroactivity principles.

Núñez's motion to terminate claim must accordingly fail.

## CONCLUSION

Based on the foregoing, this Court should affirm the district court's judgment of revocation and denial of Núñez's motion for early termination of supervised release.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 2nd day of September, 2025.

W. Stephen Muldrow
United States Attorney

Juan Carlos Reyes-Ramos
Assistant United States Attorney
Chief, Appellate Division

/s/ Ricardo A. Imbert-Fernández
Assistant United States Attorney
U.S. Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

CERTIFICATE OF COMPLIACE
WITH TYPEFACE AND LENGTH LIMITATIONS
_____

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☒ this document contains <u>7,043</u> words (principal briefs may not exceed 13,000 words; reply briefs may not exceed 7,000 words), **or**

    ☐ this document uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Book Antiqua, 14 point; **or**

    ☐ this document uses a monospaced typeface (such as Courier or Courier New) using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

Date: <u>September 2, 2025</u>          <u>/s/ Ricardo A. Imbert-Fernández</u>
                                                    Signature of filing party

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.


/s/ Ricardo A. Imbert-Fernández
Assistant United States Attorney